1
2
3
4
5
6
7
8

**IN THE UNITED STATES DISTRICT COURT**

9

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

10
11

NATASHIA IONE THOMAS,

No.  2:19-CV-1774-DMC

12

Plaintiff,

13

v.

MEMORANDUM OPINION AND ORDER

14

COMMISSIONER OF SOCIAL
SECURITY,

15
16

Defendant.

17
18

Plaintiff, who is proceeding with retained counsel, brings this action for judicial

19

review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

20

Pursuant to the written consent of all parties, ECF Nos. 10 and 11, this case is before the

21

undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28

22

U.S.C. § 636(c).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 21 and

23

22.

24

The Court reviews the Commissioner's final decision to determine whether it is:

25

(1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

26

whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

27

more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

28

(9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

Step 4        If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5        If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989).  The claimant has the initial burden of proving the existence of a disability.  See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work.  See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).  If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

1

## II.  THE COMMISSIONER'S FINDINGS

2        Plaintiff applied for social security benefits on May 24, 2012.  See CAR 17.[1]  In

3   the application, Plaintiff claims disability began on August 30, 2008.  See id.  Plaintiff's claim

4   was initially denied.  Following denial of reconsideration, Plaintiff requested an administrative

5   hearing, which was held on August 28, 2014, before Administrative Law Judge (ALJ) Mary M.

6   French.  In a March 13, 2015, decision, the ALJ concluded Plaintiff is not disabled.  See CAR 17-

7   28.  After the Appeals Council declined review on July 18, 2016, Plaintiff filed an action for

8   judicial review.  See Thomas v. Berryhill, E. Dist. Cal. case no. 2:16-CV-2060-DB.  Judge Barnes

9   remanded the case.  See ECF No. 21 in case no. 2:16-CV-2060-DB.

10       Following remand to the agency, a second administrative hearing was held before

11  the same ALJ on December 13, 2018.  See CAR 784.  In a July 2, 2019, decision, the ALJ

12  concluded plaintiff is not disabled based on the following relevant findings:

13
14              1.      The claimant has the following severe impairment(s): lumbar
                        scoliosis, bilateral carpal tunnel syndrome status post-surgical
                        carpal tunnel releases, bipolar disorder, social anxiety disorder, and
15                      mood disorder;

16              2.      The claimant does not have an impairment or combination of
                        impairments that meets or medically equals an impairment listed in
17                      the regulations;

18              3.      The claimant has the following residual functional capacity: she
                        can perform light work; she can lift and carry up to 10 pounds
19                      frequently and 20 pounds occasionally; she can occasionally climb
                        ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl; she
20                      can frequently climb ramps and stairs and balance; she can
                        occasionally feel, finger, and handle; she must avoid concentrated
21                      exposure to dusts, fumes, odors, and pulmonary irritants; she is
                        able to understand, remember, and carry out short and simple
22                      instructions; she can maintain attention for 2-hour segments,
                        maintain regular attendance, and be punctual within customary
23                      tolerances; she can sustain an ordinary routine without special
                        supervision; she can work in coordination with or in proximity to
24                      others without being unduly distracted by them; she can make
                        simple work-related decisions and complete a normal workday and
25                      workweek without interruption from psychologically based
                        symptoms; she can perform at a consistent pace without an
26                      unreasonable number and length of rest periods; she can ask simple
                        questions, request assistance, accept instructions, and respond
27                      appropriately to criticism from supervisors; she can get along with

28  _____
    [1]      Citations are the to the Certified Administrative Record (CAR) lodged on January
    21, 2020, ECF No. 15.

co-workers or peers without unduly distracting them or exhibiting behavioral extremes; she can respond appropriately to changes in a routine work setting, be aware of normal hazards, and take appropriate precautions;

4.      Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 787-800.

This second action for judicial review followed.

## III.  DISCUSSION

In her opening brief, Plaintiff argues: (1) the ALJ erred at Step 2 in determining Plaintiff's knee problems are non-severe; (2) the ALJ erred at Step 3 by failing to consider Listings 1.02 and 12.15; (3) the ALJ committed a "compendium of errors" in evaluating the medical opinions at Step 4; (4) the ALJ failed to properly evaluate lay witness evidence at Step 4; and (5) the ALJ failed to provide sufficient reasons to discount the credibility of Plaintiff's statements and testimony at Step 4.

### A.      Severity of Knee Impairment

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities.  See 20 C.F.R. §§ 404.1520(c), 416.920(c).[2]  In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe.  See Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996); see also 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923.  An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.  See Social Security

---

[2]      Basic work activities include: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  See 20 C.F.R. §§ 404.1521, 416.921.

1   Ruling (SSR) 85-28; see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (adopting

2   SSR 85-28).  The plaintiff has the burden of establishing the severity of the impairment by

3   providing medical evidence consisting of signs, symptoms, and laboratory findings.  See 20

4   C.F.R. §§ 404.1508, 416.908. The plaintiff's own statement of symptoms alone is insufficient.

5   See id.

6           At Step 2, the ALJ assessed the severity of Plaintiff's impairments.  See CAR 787-

7   88.  As to Plaintiff's knee impairment, the ALJ stated:

8           The claimant underwent bilateral knee patellofemoral realignment and
            arthroscopy in 2006 with good results.  The claimant continued working
9           until 2008.  She required no further orthopedic care until October 2009,
            more than 6 months after her date last insured (Ex. 1F).  A reasonable
10          inference, therefore, is that the claimant's knee impairment did not prevent
            the performance of work, since it did not prevent work after her surgeries
11          despite a similar medical condition.  Since May 24, 2012, the claimant's
            Title XVI protected filing date, the record reveals few complaints of knee
12          pain and little, if any, treatment.  Moreover, radiographs of her knees were
            within normal limits and examinations of the knees have been largely
13          benign (Ex. 3F/143, 4F/5, 19F/11).

14          CAR 787.

15          Plaintiff contends the ALJ's analysis is flawed because it applies the wrong

16   standard.  See ECF No. 21, pgs. 21-22.  The Court agrees.  At Step 2, the inquiry is whether an

17   impairment has more than a minimal effect on the claimant's ability to work, not whether the

18   impairment prevents work.  An impairment can only be found to be non-severe if it does not.

19   Here, the ALJ determined Plaintiff's knee impairment is not severe because, despite surgery in

20   2006, she continued to work until 2008.  The question, however, is not whether Plaintiff's knee

21   impairment prevented her from working.  Plaintiff's ability to work after her surgeries in 2006

22   does not mean that her knee impairment did not more than minimally impact her ability to engage

23   in such work.  The ALJ's inference that "claimant's knee impairment did not prevent the

24   performance of work" is not the relevant standard at Step 2.  Further, as the ALJ acknowledges,

25   Plaintiff's knee impairment required some treatment since May 24, 2012 – the date Plaintiff

26   applied for benefits.   Finally, as Defendant admits, Drs. Pancho and Battis, upon whose opinions

27   the ALJ relied, found Plaintiff's knee impairment to be severe.  See ECF No. 22, pgs. 12-13,

28   (Defendant's brief, citing CAR 85, 98, 115, and 129).

1    The Court finds the ALJ failed to apply the correct legal standard at Step 2 with

2    respect to Plaintiff's knee impairment, and Defendant does not contend otherwise.  Rather,

3    Defendant argues: (1) "For a claimant who has prevailed at step two, there can be no reversible

4    error at step two," and (2) the ALJ's analysis is sound because various doctors have concluded

5    that Plaintiff can perform a range of light work less restrictive than found by the ALJ.  See ECF

6    No. 22, pgs. 12-13.  These related arguments touch on the same principle – prejudice.  In essence,

7    Defendants assert Plaintiff was not prejudiced by the error at Step 2 because other impairments

8    were found severe allowing her case to proceed and at Step 4 the ALJ found Plaintiff retains the

9    residual functional capacity for a range of light work based on all the evidence of record,

10   including evidence of Plaintiff's knee impairment, which the ALJ specifically addressed.

11   Where the ALJ errs in not providing any reasons supporting a particular

12   determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and

13   the error is harmless if no reasonable ALJ could have reached a different conclusion had the error

14   not occurred.  See Stout v. Commissioner of Social Security, 454 F.3d 1050, 1056 (9th Cir.

15   2006).  Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e.,

16   some but not all of the reasons given for rejecting a claimant's credibility are either legally

17   insufficient or unsupported by the record), the Batson standard applies and any error is harmless

18   if it is inconsequential to the ultimate decision because the ALJ's disability determination

19   nonetheless remains valid.  See Batson v. Commissioner of Social Security, 359 F.3d 1190, 1197

20   (9th Cir. 2004).

21   The Court agrees that the ALJ's application of the incorrect standard at Step 2

22   regarding Plaintiff's knee impairment is harmless.  Here, the ALJ provided an analysis of the

23   severity of Plaintiff's impairments at Step 2, but part of that analysis was flawed.  Specifically,

24   the ALJ applied the incorrect legal standard to assess Plaintiff's knee impairment.  The Court,

25   therefore, applies the Batson standard.[3]  Under Batson, the ALJ's error is harmless if it is

26   inconsequential to the ALJ's ultimate disability conclusion.

27

28

_____

[3]    Stout would apply if the ALJ had ignored Plaintiff's knee impairment (i.e.,
provided no analysis at all).

1     Such is the case here.  In this regard, the Court finds Defendant's argument

2  persuasive.  According to Defendant:

3         . . .Dr. Battis and Dr. Pancho concluded that Plaintiff could
        perform a range of light work that was less restrictive than what the ALJ
4       found (AR 85, 98 (Dr. Pancho agreed that light RFC was appropriate after
        considering knee impairments), 113, 127 (Dr. Battis affirmed Dr.
5       Pancho's opinion)). In other words, the doctors who agreed with Plaintiff
        that she had severe knee impairments nevertheless concluded that she
6       could stand and walk six hours per day, kneel occasionally, and otherwise
        perform a range of work at least as great as what the ALJ found. . . .
7         Furthermore, the ALJ actually discussed Plaintiff's knee
        impairments in finding them non-severe, and explained that she required
8       little treatment after her alleged onset of disability in 2008, and,
        importantly, that examinations and imaging of her knees were normal (AR
9       787, citing 3F143, 4F5, 19F11/ AR 604 (1/25/12: knee joints are stable, no
        effusion, good range of motion; 2/13/12: x-rays of knees within normal
10      limits), 627 (same), 773 (Dr. Ali's examination of knees)). . . .

11     ECF No. 22, pg. 13.

12  As discussed in more detail below, in addition to Drs. Pancho and Battis, Drs. Genest and Ali also

13  concluded Plaintiff is capable of engaging in the physical demands of light work.

14     As Defendant notes, the ALJ considered the objective evidence regarding

15  Plaintiff's knee impairment, which showed that it was not such that would contribute to disability,

16  as well as the opinion evidence, to conclude that Plaintiff retains the residual functional capacity

17  to perform a range of light work.  This determination would have remained the same even had the

18  ALJ applied the correct legal standard at Step 2 to evaluation of Plaintiff's knee impairment and

19  concluded that impairment was also severe.  Again, whether an impairment is severe is a gate-

20  keeping finding, and even a finding that an impairment is severe, does not necessarily equate to

21  the remaining sequential findings necessary to conclude a claimant is disabled.  The Court finds

22  that the ALJ's error at Step 2 is inconsequential to the ALJ's ultimate decision.[4]

23  / / /

24  / / /

25  / / /

26  / / /

27

28     [4]   Whether the ALJ's ultimate determination of non-disability is otherwise sound is
    discussed further in this decision.

8

1

### B.      Listing of Impairments

2

The Social Security Regulations "Listing of Impairments" is comprised of

3

impairments to fifteen categories of body systems that are severe enough to preclude a person

4

from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

5

C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they

6

are irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing,

7

all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

8

1985).

9

At Step 3, the ALJ considered whether Plaintiff's severe impairments, singly or in

10

combination, meet or medically equal an impairment listed in the regulations.  See CAR 788-89.

11

In particular, the ALJ considered Listings 1.04, 11.09, 12.04, and 12.06.  See id.  Plaintiff

12

contends the ALJ erred by not considering Listings 1.02 and 12.15.  See ECF No. 21, pgs. 22-25.

13

The Court finds the ALJ's failure to consider Listing 1.02, relating to dysfunction

14

of the joints due to any cause, is dispositive.  According to Plaintiff:

15

16

The medical evaluators both at initial and reconsideration decision
identified Listing 1.02 as requiring consideration. AR 87, 116. The ALJ
gave "great weight" to both evaluations but ignored Listing 1.02 without
explanation. Even if the ALJ's non-severity determination as to Ms.
Thomas' knees was not error (and, it was error), such did not relieve the
ALJ from considering knee limitations in combination with other
impairments at Step three and Listing 1.02, specifically, as the State
agency medical reviewers identified its applicability. Because it cannot be
said that no reasonable ALJ on this record could not have reached a
different result, the failure to consider Listing 1.02 was not harmless and
remand is required. Stout v. Commissioner, Social Sec. Admin., 454 F.3d
1050, 1056 (9th Cir. 2006).

17

18

19

20

21

22

ECF No. 21, pg. 23.

23

As Plaintiff correctly observes, state agency reviewing doctor, L. Pancho, whose

24

opinion the ALJ gave great weight, indicated that consideration of Listing 1.02 was appropriate.

25

See CAR 87.  Agency reviewing physician, Dr. Battis, upon whose opinion the ALJ also relied,

26

similarly concluded that consideration of Listing 1.02 was warranted.  See id. at 116.  The ALJ,

27

however, did not consider this listing, likely because the ALJ concluded at Step 2 that Plaintiff's

28

knee impairment was not severe.  Given that Court's finding above that the ALJ erred at Step 2

1   regarding the severity of Plaintiff's knee impairment, the ALJ also erred at Step 3 in failing to

2   consider Listing 1.02 in the context of Plaintiff's knee impairment.

3          The Court agrees with Defendant regarding the ALJ's failure to explicitly evaluate

4   Listing 12.15.  As Defendant correctly notes, Listing 12.15 requires some of the same essential

5   elements as Listings 12.04 and 12.06, both of which were considered by the ALJ.  Given the

6   ALJ's finding that neither is met, Listing 12.15 is necessarily also not met.

7          While the Court finds no error in the ALJ's failure to explicitly evaluate Listing

8   12.15, the Court nonetheless concludes that the ALJ erred by failing to consider Listing 1.02

9   insofar as that listing might be applicable given Plaintiff's knee impairment.

10   **C.**   **Credibility**

11          The Commissioner determines whether a disability applicant is credible, and the

12   court defers to the Commissioner's discretion if the Commissioner used the proper process and

13   provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit

14   credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903

15   F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d

16   821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible

17   and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative

18   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

19   credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d

20   1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007),

21   and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

22          If there is objective medical evidence of an underlying impairment, the

23   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

24   because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d

25   341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

26          The claimant need not produce objective medical evidence of the
       [symptom] itself, or the severity thereof.  Nor must the claimant produce
27     objective medical evidence of the causal relationship between the
       medically determinable impairment and the symptom.  By requiring that
28     the medical impairment "could reasonably be expected to produce" pain or

1

> another symptom, the Cotton test requires only that the causal relationship
> be a reasonable inference, not a medically proven phenomenon.

2

3

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in
> Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

4           The Commissioner may, however, consider the nature of the symptoms alleged,

5    including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell,

6    947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the

7    claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

8    testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

9    prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

10   physician and third-party testimony about the nature, severity, and effect of symptoms.  See

11   Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

12   claimant cooperated during physical examinations or provided conflicting statements concerning

13   drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

14   claimant testifies as to symptoms greater than would normally be produced by a given

15   impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

16   Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

17          At Step 4, the ALJ assessed the weight to give Plaintiff's statements and

18   testimony.  See CAR 789-98.  The ALJ did so in a combined evaluation of the objective medical

19   evidence as well as the medical opinions and lay witness evidence.  See id.  The ALJ summarized

20   Plaintiff's statements and testimony as follows:

21

> The claimant was born in 1980 and is now aged 38.  She alleged disability
> due to anxiety, PTSD, bipolar manic-depression, scoliosis, and two knee

22

> surgeries.  As a result of her impairments, she asserted as follows.  She has
> difficulty lifting, twisting, squatting, bending, standing, walking, sitting,

23

> kneeling, climbing stairs, seeing, remembering, completing tasks,
> concentrating, understanding, using her hands, and getting along with

24

> others.  She reported she had to take breaks while working at a pizza job
> she had in the past.  She has back pain and her hands do not work

25

> properly.  She reports dropping things out of her hands.  Her fingers
> fumble due to numbness and cramping.  She wears braces on her hands at

26

> night.  She estimated she could stand for 7 minutes and walk 2 blocks.
> She has difficulty sleeping.  She is forgetful; her medications make her

27

> "space-out."  She has difficulty climbing or running around to play with
> her children.  She feels nervous when she is outside.  She does not like to

28

> talk on the telephone.  She has difficulty getting along with family

1

2

> members and does not like to be around people.  She underwent bilateral
> carpal tunnel surgeries in 2016, which were somewhat helpful, but she
> said that she continues to have numbness and cramping causing her to
> drop things form her hands.

3

4

5

6

7

8

9

10

> The claimant testified at the December 2018 hearing that she underwent
> bilateral carpal tunnel releases and received physical therapy two years
> ago.  She gained hand strength, but said that she remains symptomatic.
> However, she admitted she did not return to her surgeon to address these
> complaints.  Her bipolar symptoms caused her to have an "attitude,"
> which resulted in her being fired from this job, but not her job as a
> caregiver.  She cannot do caregiving anymore because of issues with her
> hands, difficulty standing for long, and problems with social issues.  She
> stated surgery and physical therapy did not help her hands because she still
> has no strength in her hands and still drops things.  She is not receiving
> any mental health treatment and does not take any medications other than
> an inhaler.  She uses ibuprofen, marijuana, and CBD cream for pain.  She
> uses marijuana for her anxiety.  She does not go to the store by herself and
> states she cannot work in public.  She has not sought mental health
> treatment since she got "clean" 5 or 6 years ago.

11

> CAR 790.

12

13

The ALJ next considered lay witness statements offered by Plaintiff's friend,

14

Susan Smith.  See id. at 790-91.  The ALJ then offered the following vague and generalized

15

boilerplate statement recited in almost every hearing decision:

16

17

18

19

> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairments could reasonably be
> expected to cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence, and limiting effects of
> these symptoms are not entirely consistent with the medical evidence and
> other evidence in the record for the reasons explained in this decision.

> Id. at 791.

20

21

The ALJ then engages in an extensive and lengthy discussion of the objective medical evidence

22

and the various opinions rendered by medical professionals.  See id. at 791-98.  Finally, the ALJ

23

concludes:

24

25

26

27

28

> In sum, [Plaintiff's] allegations are partially supported by her diligence in
> seeking treatment for her conditions.  While there were a couple of
> occasions of increased abnormal clinical findings, the record does not
> reveal any significant signs or marked limitations that persisted throughout
> the relevant period.  The weight of the evidence shows that while she
> experiences some pain, numbness, irritability, and difficulty focusing, they
> are controlled such that she could nonetheless perform a range of simple,
> light exertional work as set forth herein.

1
2
3
4
5
6
7
8

     In reaching this conclusion, the undersigned finds that the claimant has severe impairments that cause some limitations of her ability to perform work activities.  Indeed, the assessment of the claimant's residual functional capacity allows for many of her subjective complaints and limitations.  As discussed above, however, the extent to which the claimant alleges an inability to perform any significant work activities on a sustained basis are not fully supported when considered in light of the entirety of the evidence of record.  The sporadic treatment along with the routine treatment modalities consisting primarily of occasional medication use and two successful carpal tunnel releases persuades the undersigned that the claimant's allegations of daily severe symptoms and significant limitations are inconsistent with the medical evidence of record overall.

CAR 798.

9
10

    Plaintiff argues: "The rationales offered. . . do not pass muster. . . ."  ECF No. 21, pg. 47.  According to Plaintiff:

11
12
13
14
15
16
17
18
19
20
21
22
23

    The ALJ's discussion of why she disbelieved Ms. Thomas' pain and limitations testimony is literally littered with citations to entire sections of the medical record. See, e.g., AR 791, citing, inter alia, "2F" (99 pages), "9F" (23 pages) "13F" (10 pages) "16F" (28 pages) and "8F" (11 pages). The ALJ's undifferentiated bulk citation to 99 pages of the Administrative Record as supposed support for a contention does not satisfy her obligation to set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] [her] interpretation thereof, and make[] findings." *Cotton v. Bowen, supra*, 799 F.2d at 1408; *See, e.g., Romo v. Colvin*, 83 F.Supp.3d 1116, 1121 n.4 (D. Colo. 2015) (faulting an ALJ's "global references to multi-page exhibits, without pinpoint citations to specific pages"; "This court is neither required nor inclined to scour the record in an attempt to divine the specific basis for an ALJ's opinion."). The ALJ's failure to identify supposedly contradictory evidence with sufficient particularity for this Court to conduct a meaningful review precludes a finding that the ALJ's discrediting of Ms. Thomas' pain and limitations testimony was supported by substantial evidence.
    Another overarching problem is the ALJ's pervasive failure to identify what specific pain and limitations testimony she believed and what specific pain and limitations testimony she did not believe. The ALJ's failure, from start to finish, to "specifically identify the testimony she or he finds not to be credible" is a separate and independent error that precludes a finding that her decision was based on substantial evidence. *Holohan v. Massanari, supra*, 246 F.3d at 1208; *Reddick v. Chater, supra*, 157 F.3d at 724.

24

ECF No. 21, pgs. 47-48.

25
26
27
28

    Plaintiff's argument is persuasive.  The manner in which the ALJ evaluated Plaintiff's statements and testimony is inadequate.  First, the ALJ has made only general findings, which are insufficient.  *See* Lester, 81 F.3d at 834.  In particular, the ALJ has failed to identify what testimony is not credible and what evidence undermines the testimony.  *See* id.  Here, the

1   ALJ summarized Plaintiff's statements and testimony.  The ALJ then engaged in a lengthy

2   discussion of the objective evidence and medical opinion evidence, providing assessments as to

3   the weight given the various opinions.  Finally, the ALJ concluded that Plaintiff's statements and

4   testimony are "partially supported."  The ALJ does <u>not</u> state which portions of Plaintiff's

5   statements and testimony are supported and which are not.  Nor has the ALJ identified which

6   portions of the objective evidence or opinion evidence supports or undermines specific testimony

7   found not credible.  As in <u>Romo</u>, cited by Plaintiff, this Court is not inclined to comb through the

8   extensive medical record in this case to attempt to discern which portions of the record generally

9   cited by the ALJ support or do not support Plaintiff's allegations.  This is a task which falls to the

10  ALJ in the first instance.

11          Defendant's arguments in support of the ALJ's analysis are unpersuasive.

12  Defendant makes a good effort to sort out the objective evidence and opinions cited by the ALJ in

13  terms of the various allegations made by Plaintiff.  <u>See</u> ECF No. 22, pgs. 24-26.  In doing so,

14  Defendant does on appeal what the ALJ should have done at the agency level – identify the

15  testimony found not credible and the specific evidence supporting that conclusion.  The Court can

16  only guess, however, whether the ALJ's assessment followed Defendant's analysis.  Because this

17  Court is tasked with reviewing the agency's final decision, Defendant's attempt to cure the ALJ's

18  error on appeal is not availing.

19          In this regard, the Court considers whether the ALJ's flawed evaluation of

20  Plaintiff's credibility is harmless.  Because the ALJ provided some analysis, albeit flawed, the

21  error is only harmless if it is inconsequential to the ALJ's ultimate determination of non-

22  disability.  <u>See</u> <u>Batson</u>, 359 F.3d ay 1197.  In <u>Batson</u>, the court applied harmless error analysis to

23  the ALJ's failure to properly credit the claimant's testimony.  <u>See id.</u>  Specifically, the court

24  concluded:

25              However, in light of all the other reasons given by the ALJ for Batson's
                lack of credibility and his residual functional capacity, and in light of the
26              objective medical evidence on which the ALJ relied, there was substantial
                evidence supporting the ALJ's decision.  Any error the ALJ may have
27              committed in assuming that Batson was sitting while watching television,
                to the extent that this bore on an assessment of ability to work, was in our
28

1

view harmless and does not negate the validity of the ALJ's ultimate
conclusion that Batson's testimony was not credible.

2

Id. (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

3

Here, unlike Batson, the Court does not know with any certainty any of the reasons

4

relied upon by the ALJ due to the manner in which the ALJ evaluated Plaintiff's credibility.

5

Thus, the Court cannot say with certainty that the ALJ's error is inconsequential to the ultimate

6

disability determination. The record in Batson reflected other valid reasons the ALJ cited to

7

discount the claimant's credibility. The Court in this case has no such record.

8

While the Court does not necessarily find that the ALJ's ultimate conclusions with

9

respect to the credibility of Plaintiff's statements and testimony are incorrect, the Court finds that

10

the ALJ's process is deficient because it does not allow for meaningful review. A remand is

11

appropriate to allow the agency in the first instance to properly evaluate Plaintiff's statements and

12

testimony.

13

**D.      Medical Opinions**

14

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue,

15

533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). The ALJ errs by not

16

explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

17

2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

18

opinion over another. See id.

19

Under the regulations, only "licensed physicians and certain qualified specialists"

20

are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

21

674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on

22

an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it

23

rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144,

24

1149 (9th Cir. 2001). The opinions of non-examining professionals may also constitute

25

substantial evidence when the opinions are consistent with independent clinical findings or other

26

evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Social

27

workers are not considered an acceptable medical source. See Turner v. Comm'r of Soc. Sec.

28

15

1    Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants

2    also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).

3    Opinions from "other sources" such as nurse practitioners, physician assistants, and social

4    workers may be discounted provided the ALJ provides reasons germane to each source for doing

5    so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874

6    F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance

7    when opinions from "other sources" may be considered acceptable medical opinions).

8           The weight given to medical opinions depends in part on whether they are

9    proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d

10   821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

11   professional, who has a greater opportunity to know and observe the patient as an individual, than

12   the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

13   Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the

14   opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th

15   Cir. 1990).

16          In addition to considering its source, to evaluate whether the Commissioner

17   properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

18   the record; and (2) clinical findings support the opinions.  The Commissioner may reject an

19   uncontradicted opinion of a treating or examining medical professional only for "clear and

20   convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.

21   While a treating professional's opinion generally is accorded superior weight, if it is contradicted

22   by an examining professional's opinion which is supported by different independent clinical

23   findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,

24   1041 (9th Cir. 1995).

25          A contradicted opinion of a treating or examining professional may be rejected

26   only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d

27   at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the

28   facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

The hearing decision reflects that the ALJ considered medical opinions form the following sources at Step 4: (1) Shahid Ali, M.D.; (2) L. Pancho M.D.; (3) Sandra Mattis, M.D.; (4) McDaniel, M.D.; (5) Genest, M.D.; (6) Herbert Monie, M.D.; (7) Douglas McMullin, M.D.; (8) Adrianne Gallucci, Psy.D.; (9) Margaret Pollack, Ph.D.; and (10) John Champlin, M.D.  See CAR 792-97.  The weight the ALJ assigned to these doctors' opinions is summarized below:

| | |
|---|---|
| Dr. Champlin | Little weight.  See id. at 793. |
| Dr. Monie | Little weight.  See id. at 793-94. |
| Dr. McMullin | Little weight.  See id. at 794. |
| Dr. McDaniel | Some weight.  See id. at 794-97. |
| Dr. Gallucci | Great weight.  See id. at 792. |
| Dr. Pollack | Great weight.  See id. |
| Dr. Ali | Great weight.  See id. at 795, 797. |
| Dr. Pancho | Great weight.  See id. |
| Dr. Battis | Great weight.  See id. |
| Dr. Genest | Greatest weight.  See id. at 797. |

Plaintiff argues: (1) there is no basis to give Dr. Genest's opinion the greatest weight; (2) there is no basis to give any weight to the opinions offered by Dr. Ali; (3) the ALJ erred in giving great weight to the opinions of the state agency physicians, Drs. Battis and Pancho; (4) the ALJ "defies credulity" in giving great weight to the opinions of Drs. Gallucci and

1    Pollack regarding Plaintiff's mental impairments; and (5) the ALJ failed to provide adequate

2    reasons for rejecting the opinions of treating sources, Drs. Monie, Champlin, and McDaniel.  See

3    CAR 21, pgs. 26-45.  Plaintiff raises no arguments related to the ALJ's evaluation of Dr.

4    McMullin's opinions, which the ALJ gave little weight.

5                    1.    Testifying Medical Expert, Dr. Genest[5]

6                The ALJ accepted medical testimony at the second administrative hearing from

7    Dr. Genest.  The ALJ described this testimony as follows:

8            Medical expert Dr. Genest testified at the December 2018 hearing that the
             claimant has a history of bilateral carpal tunnel syndrome that was severe
9            on nerve conduction studies but "mild" clinically (Ex. 16F, 18F, 19F).  He
             found that the claimant's impairments did not meet or equal any listing,
10           including listing 11.09.  Physically, she is primarily limited by carpal
             tunnel syndrome.  He stated he agreed with the conclusions of consultative
11           examiner Dr. Ali that the claimant could lift 10 pounds frequently and 20
             pounds occasionally.  She could sit, stand, and walk 8 hours a day.  She
12           could occasionally push, and pull frequently, use her feet frequently, and
             perform frequent postural and environmental activities.  However, he
13           found no limitations in reaching but added that she could handle, finger,
             and feel occasionally due to her carpal tunnel symptoms, which she
14           reported in her testimony were ongoing.  Dr. Genest specifically addressed
             the opinions of Drs. Monie and McMullin, stating that there was no
15           objective evidence to support the limitations they provided for physical
             limitations.  Dr. Genest did not opine on mental imitations because they
16           are outside his specialty.  It is further noted that the claimant's
             representative agreed with Dr. Genest's testimony that there was no
17           objective evidence of physical disease to support the limitations of Drs.
             Monie and McMullin (Hearing Testimony 12/13/18).
18
             CAR 797.
19

20   As to Dr. Genest's testimony, the ALJ concluded:

21           . . .[T]he undersigned gives greater weight to the additional limitations
             imposed by Dr. Genest.  Dr. Genest is a board-certified neurosurgeon who
22           had the opportunity to review the available evidence and the claimant's
             testimony about her symptoms.  In light of the updated evidence of record
23           and the subjective complaints as expressed by the claimant, the
             undersigned finds that the record support a limitation to light exertional
24           work with occasional to frequent postural activities, occasional handling,

25   ──────────────
             [5]    The hearing decision and the parties' briefs all refer to "Dr. Genest" who testified
26   as a medical expert at the December 2018 second hearing.  The transcript of the hearing provided
     with the CAR, however, indicates that medical expert testimony was offered by Dr. Janae.  See
27   CAR 811, 814.  The testifying medical expert's curriculum vitae is contained in the record at
     Exhibit 21F.  See CAR 1044-55.  The curriculum vitae attached is for Dr. Stephen Genest, M.D.,
28   F.I.C.S.  See id. at 1044.  The record contains no curriculum vitae for Dr. Janae.  The Court
     presumes the discrepancy is due to a transcription error.

1     fingering, and feeling, and no concentrated exposure to pulmonary
2     irritants. . . .

      Id.

3     Plaintiff contends the ALJ erred in giving the greatest weight to Dr. Genest's

4  opinions.  See ECF No. 21, pgs. 26-29.  First, Plaintiff argues there is no evidence to support the

5  ALJ's statement that Dr. Genest is "a board-certified neurosurgeon."  See id. at 26-27.  Second,

6  Plaintiff contends the ALJ erred in relying on Dr. Genest's "opportunity to review the available

7  evidence" because "he did not avail himself much of that opportunity."  Id. at 27.  Third, Plaintiff

8  states Dr. Genest "could not opine on any mental health-related issues."  Id.  Fourth, Plaintiff

9  argues the ALJ erred in relying on Dr. Genest's opinions because he failed to provide a detailed

10  explanation for his opinions, as required of a non-examining source.  See id. at 27-28.  Finally,

11  Plaintiff contends there are "other, intangible factors" undermining Dr. Genest's opinions.  Id. at

12  28.

13     According to Plaintiff: "ALJ French brought in Dr. Genest, a 'hired gun' of

14  dubious credibility and, charitably, marginal professional qualifications, deficits Ms. Thomas

15  could not discover because of the lack of advance notice. . . ," and "[t]he grant of 'great weight'

16  to Dr. Genest's opinion is eloquent evidence of the lengths to which the ALJ went [to] sidestep

17  this Court's mandate to provide a full and fair evaluation of whether Ms. Thomas meets or equals

18  the Criteria of Listing 11.14."  Id.

19     At the outset, the Court takes issue with Plaintiff's counsel's characterization of

20  the ALJ.  Aspersions thrown at the ALJ do not advance Plaintiff's arguments and are wholly

21  inappropriate.  While counsel is obligated to zealously advocate on behalf of his client, the Court

22  expects counsel to do so in a respectful manner.  Counsel is cautioned that briefs filed with this

23  Court after the date of this decision which demonstrate a lack of respect for the ALJ may subject

24  counsel to the imposition of sanctions.

25  / / /

26  / / /

27  / / /

28
                                          19

1          Next, the Court notes that, while Plaintiff accuses the ALJ of taking great lengths

2   to "sidestep" evaluation of Listing 11.14, the current hearing decision reflects that the ALJ did in

3   fact address this listing.  See CAR 788.  Specifically, the ALJ stated:

4

> The district court decision. . . stated that the prior [administrative] decision
> failed to consider listing 11.14, peripheral neuropathies, based on the
5      claimant's allegations of numbness in her hands.  However, the prior
> decision stated that the claimant's hand symptoms did not meet the criteria
6      of *any* of the neurological listings, which by definition includes all of the
> listings in section 11.00 (entitled *"Neurological"*), including 11.14 (Ex.
7      9A/8). . . .

8          Id. (emphasis in original).

9   The Court also notes that, notwithstanding Plaintiff's unfounded objection concerning the ALJ's

10   handling of Listing 11.14, Plaintiff makes no argument related to Listing 11.14 in the current

11   appeal.

12          The Court next turns to Plaintiff's specific arguments related to the ALJ's

13   evaluation of Dr. Genest's opinions.

14          i.     Board Certification

15          According to Plaintiff:

16

> The first reason offered by the ALJ for giving the greatest weight
> to Dr. Genest's opinions was the claim he is a board-certified
17      neurosurgeon. There is simply no basis for that assertion. While his 12-
> page CV states he was board-certified as a neurosurgeon in 1967 (AR
18      1044), there is nothing to indicate that he is current with the ongoing
> annual re-certification requirements of the American Board of
19      Neurological Surgery ("ABNS"), (footnote omitted) and Dr. Genest is not
> found in the ABNS on-line directory of board-certified neurosurgeons.
20      The only even remotely recent certification referenced in Dr. Genest's 12-
> page CV is from 1994, when he became certified as a "medical
21      examiner."18 AR 1050. The details page of his licensure information with
> the California Medical Board identifies no current certifications
22      whatsoever.19 Bluntly, the ALJ (whether by ignorance or design or
> because deceived) inflated Dr. Genest's qualifications to lend credibility to
23      his opinions.

24          ECF No. 21, pgs. 26-27.

25          Plaintiff's argument is unpersuasive.  Dr. Genest's curriculum vitae indicates that

26   the doctor is board-certified in neurology.  See CAR 1045.  While Plaintiff suggests that Dr.

27   Genest's board certification was not current at the time of the hearing in December 2018, Plaintiff

28   has not proved the assertion.  Plaintiff references an internet search that revealed no current board

1    certification in neurology for Dr. Genest.  See ECF No. 21, pg. 26.  Defendant, however,

2    references a different internet search that shows Dr. Genest was board certified in neurology as of

3    2020.  See ECF No. 22, pg. 18.  The Court is not willing to engage in a collateral discussion of

4    whether one internet search or the other is more reliable to prove the point.  Suffice it to say,

5    Plaintiff's citation to an internet search fails to carry her burden of establishing that Dr. Genest

6    was not board-certified in neurology at the time of the December 2018 hearing.  Plaintiff has

7    pointed to no other indication that Dr. Genest's representation in his curriculum vitae is false.

8                          ii.      Review of Records

9            Plaintiff contends:

10                   The second reason offered by the ALJ for giving the greatest
             weight to Dr. Genest's opinions was that he "had the opportunity to
11           review the available evidence and the claimant's testimony about her
             symptoms." AR 797. He may have "had the opportunity," but he did not
12           avail himself much of that opportunity. The ALJ stated that Dr. Genest
             was called as a witness specifically and solely "to address the issues on
13           remand relating to Listing 11.14." AR 1040. Listing 11.14 relates to
             peripheral neuropathy, in this case Ms. Thomas' carpal tunnel issues.
14           However, his first question to Ms. Thomas was why she had not yet had
             carpal tunnel surgery (AR 812-13); he was completely unaware that she
15           had had carpal tunnel surgery on both wrists three years earlier. Also, the
             ALJ's assertion that Dr. Genest had the opportunity to review Ms.
16           Thomas' testimony is factually dubious; the ALJ stated during hearing that
             Dr. Genest had only been given medical records and had not received
17           Administrative Record documents such as this Court's prior order. AR
             820. There is nothing on the face of the record even hinting that Dr.
18           Genest had the opportunity to review the 27 pages of prior testimony by
             Ms. Thomas and he was dropped from the conference call before Ms.
19           Thomas testified at the second hearing.

20           ECF No. 21, pg. 27.

21           Plaintiff's argument is both unpersuasive and puzzling given that, as indicated

22   above, Plaintiff offers no arguments in the current appeal challenging the ALJ's discussion

23   concerning Listing 11.14.  In any event, the Court agrees with Defendant, who argues: ". . .Even

24   so, Plaintiff told Dr. Genest at the hearing that she had carpal tunnel surgery (AR 813), and Dr.

25   Genest accepted that testimony and opined that Plaintiff could only occasionally use her hands,

26   i.e., she could use her hands only two hours out of an eight-hour day, an extremely restrictive

27   limitation (AR 816)."  ECF No. 22, pg. 18.  In this regard, Plaintiff suggests Dr. Genest could not

28   have known about Plaintiff's testimony because the doctor "was dropped from the conference call

before Ms. Thomas testified. . . ." ECF No. 21, pg. 27.  The hearing transcript, however, shows

that Plaintiff testified about her carpal tunnel surgery <u>before</u> the medical expert testified.  <u>See</u>

CAR 807-44 (transcript of December 2018 administrative hearing).  The Court concludes that, to

the extent Dr. Genest was unaware of records relating to Plaintiff's carpal tunnel surgery, the

doctor was nonetheless made aware of Plaintiff's surgeries at the hearing and accepted Plaintiff's

claimed limitations related thereto.

iii.     <u>Mental Health Issues</u>

Plaintiff asserts:

> In addition, even though Listing 11.14B has both a medical
> component and a mental health component, Dr. Genest specifically stated
> that he could not opine on any mental health-related issues. AR 822. It
> was impossible for him, by his own admission, to opine with any authority
> as to even the narrow issue on which he was retained to opine.

ECF No. 21, pg. 27.

Again, the Court finds Plaintiff's argument puzzling given that she does not raise

any claim of error in the current appeal regarding the ALJ's discussion of Listing 11.14.

Moreover, the hearing decision reflects that the ALJ did not rely on Dr. Genest's testimony in

addressing Listing 11.14.  <u>See</u> CAR 788.

iv.     <u>Detailed Explanation</u>

Plaintiff contends:

> Further, as a non-treating/non-examining physician Dr. Genest had
> to provide a detailed explanation for his opinions (§ 404.1527(c)(4)); all
> Dr. Genest offered was the bald opinion that Ms. Thomas does not meet
> the Criteria of Listing 11.14, an opinion proffered even while he
> disclaimed any competence as to one of the two components of that
> Listing. Dr. Genest never mentioned–much less discussed–the EMG test
> results diagnosing "bilateral severe median neuropathy at the wrists." AR
> 762. He never mentioned–much less discussed–the surgical notes or post-
> operative evaluation notes regarding Ms. Thomas' carpal tunnel surgery
> two years earlier. AR 1179-1225. He never mentioned–much less
> discussed–the scaphoid fracture of her right wrist. AR 1142. He never
> mentioned -- much less discussed–that she wears splints on her wrists to
> ameliorate the symptoms of carpal tunnel syndrome. AR 1177. The only
> specific portion of the medical record Dr. Genest cited in his testimony
> was Dr. Ali's cursory consultative examination report which made no
> effort, at least on its face, to evaluate Ms. Thomas' carpal tunnel syndrome
> and, like Dr. Genest's testimony, entirely failed to discuss the EMG study
> and its attendant finding of bilateral severe ulnar neuropathy. Also, Dr.
> Genest did not even get Dr. Ali's report right: Dr. Genest testified that Dr.

22

1
2
> Ali had not opined as to manipulative limitations; Dr. Ali rendered opinions as to manipulative limitations in his examination report (AR 774) and his "medical source statement" (AR 767).

3
ECF No. 21, pgs. 27-28.

4  The only referenced legal support is 20 C.F.R. § 404.1527(c)(4).  This regulation

5  governs the evaluation of opinion evidence in claims filed before March 27, 2017.  See 20 C.F.R.

6  § 404.1527.  Sub-section (c)(4) provides: "Generally, the more consistent a medical opinion is

7  with the record as a whole, the more weight we will give to that medical opinion."  20 C.F.R.

8  § 404.1527(c)(4).  The Court fails to see how this authority supports Plaintiff's contention.

9  Moreover, Plaintiff challenges the doctor's lack of detailed explanation regarding Listing 11.14, a

10  listing Plaintiff does not argue in this appeal.

11
                          v.      Other Factors

12  Plaintiff argues:

13
14
15
16
17
18
> Finally, there are the other, intangible, factors encompassed within (c)(6). Ms. Thomas respectfully submits are relevant to Dr. Genest's general competence; according to his own CV, he has not had a relationship with any hospital anywhere in the greater San Jose area since 1996. It is relevant to his competence that: (1) his privileges at one hospital (Good Samaritan) were revoked by the hospital in 1995 "medical disciplinary cause"; and (2) shortly after that his relationships with the only two other hospitals where he still had consulting privileges ended. It is also relevant to his credibility that Dr. Genest's CV mentions that his relationship with Good Samaritan ended but fails to disclose that it because Good Samaritan revoked those privileges.

19  ECF No. 21, pg. 28.

20  This apparent afterthought argument is completely meritless.  Plaintiff has

21  provided no evidence to support her assertions.  Nor has she cited to any authority to show that

22  Dr. Genest's privileges or lack thereof are in any way relevant.  The Court reminds Plaintiff's

23  counsel of his obligation to present arguments only with a good faith belief that they are

24  supported by law and fact.  Counsel's failure to cite to either in support of this particular

25  argument suggests a lack of good faith, which is also potentially sanctionable conduct.

26  / / /

27  / / /

28  / / /

2.      Consultative Examining Professional, Dr. Ali

As to Dr. Ali, whose opinion the ALJ gave great weight, the ALJ stated:

> At a consultative internist evaluation conducted by Shahid Ali, M.D., in October 2014, the claimant complained of low back pain, knee pain, and pain in her hands with numbness and tingling.  Dr. Ali diagnosed low back pain, knee pain, and hand pain that was likely carpal tunnel syndrome.  Examination revealed no loss of motion of her spine or joints.  Straight leg raise tests were negative.  He noted "minimal" paravertebral spasms.  Although there was diminished sensation in the left upper extremity, he noted a Tinel's sign was negative.  There was no swelling, erythema, or joint tenderness.  Reflexes and muscle motor strength were "normal."  She was able to walk on her heels and toes and perform a squat.  She walked without assistance and sat "comfortably."  She was able to get on and off the examination table without assistance and was able to don and doff her shoes without difficulty.  Dr. Ali opined that the claimant could stand, walk and sit without limitation.  She could lift and carry 25 pounds occasionally, and 10 pounds frequently.  She could occasionally climb, balance, stoop, kneel, crouch, and crawl.  The undersigned has taken note of the discrepancies in Dr. Ali's opinion.  Elsewhere in the report, Dr. Ali opined that the claimant could frequently reach, handle, finger, push, and pull, but could never feel.  She could frequently climb, balance, stoop, kneel, crouch, and crawl.  Dr. Ali further observed that the claimant was able to care for herself, prepare meals, and could sort, handle, or use paper files (Ex. 19F).

> * * *

> . . .Dr. Ali's opinion was based on direct examination, personal observation, and objective tests.  His opinion is consistent with the routine treatment the claimant sought and with the minimal objective findings on his examination and the minimal discussed findings in the treatment record. . . .

CAR 795, 797.

Plaintiff argues: "There is no basis in the record to give 'great weight' to the opinions of examining physician Shahid Ali and little, if any, basis to give his opinions any weight."  ECF No. 21, pg. 29.  First, Plaintiff argues the ALJ failed to consider the doctor's familiarity with the record.  See id.  Second, Plaintiff contends the ALJ could not give additional weight to Dr. Ali's opinions based on the doctor's specialty because, while Dr. Ali states he is "board-certified," he does not identify the specialization.  See id. at 30.  Third, Plaintiff asserts the ALJ failed to address inconsistencies in Dr. Ali's report.  See id. at 30-31.  Fourth, Plaintiff argues the ALJ failed to consider inconsistencies between Dr. Ali's opinions and the record as a whole.  See id. at 31.  Fifth, Plaintiff argues the ALJ erred in relying on Dr. Ali's report because it

24

1   is unexplained.  See id. at 31.  Finally, Plaintiff contends the ALJ failed to consider the

2   "thoroughness" of Dr. Ali's opinion.  Id. at 31-32.

3           In footnote 20 of Plaintiff's brief, Plaintiff adds:

4               Dr. Ali's examination of Ms. Thomas was commissioned after the
        first hearing before ALJ French. His report was not provided to Ms.
5       Thomas or her lay representative before (or even after) the ALJ issued her
        first opinion. The ALJ seemingly tried to conceal these facts by
6       identifying Dr. Ali's report in the list of exhibits appended to her decision
        as received prior to the hearing (AR 33) and thus presumably provided to
7       claimant's representative before the hearing.

8           ECF No. 21, pg. 29, n.20 (emphasis added).

9   In essence, Plaintiff accuses the ALJ of lying, presumably for the purpose of thwarting Plaintiff's

10  claim.  Plaintiff provides no support in law or fact for her contention that the ALJ acted so

11  improperly.  Plaintiff's counsel is again cautioned that presenting specious and disrespectful

12  arguments without any good faith basis in law or fact is sanctionable conduct.

13          The Court turns to Plaintiff's specific arguments with respect to the ALJ's

14  evaluation of Dr. Ali's opinions.

15                      i.      Familiarity with the Record

16          Citing 20 C.F.R. § 404.1527(c)(6), Plaintiff argues the ALJ failed to consider Dr.

17  Ali's lack of familiarity with the entire record.  See ECF No 21, pgs. 29-30.  According to

18  Plaintiff:

19              . . . Dr. Ali's report states that before the examination he was
        provided four treatment notes; the report provides the dates of the notes
20      but does not say what they relate to. AR 771. A review of the medical
        record shows that the only documents bearing those dates are: (1) a June
21      23, 2010 treatment note relating to a hip and buttocks injury from a slip
        and fall; (AR 751-53); (2) a February 20, 2013, note regarding social
22      anxiety disorder and mood disorder (AR 749-50); (3) a January 14, 2014
        treatment note regarding a mouth infection (AR 746-48); and (4) the
23      August 27, 2014 EMG study by Dr. Parvinder. AR 761-62. The first and
        third notes are irrelevant to any issue. The second note is germane to
24      mental health issues but irrelevant as to Dr. Ali; he has no identified
        expertise in mental health, conducted no mental health examination and
25      rendered no opinions on mental health issues.  The fourth treatment note,
        the EMG study, is squarely relevant but either Dr. Ali did not read it or
26      [he] misunderstood it; his report diagnosis "possible carpal tunnel
        syndrome" (AR 774) while the EMG study and resulting report (from a
27      board-certified neurologist) expressly and unequivocally diagnosed
        "bilateral severe median neuropathy at the wrists" AR 762. In short, Dr.
28      Ali evidenced no understanding even of the two pages of relevant medical

                                                 25

1

2

3

records provided to him (out of 460 pages of medical records then extant); manifestly, Dr. Ali's opinions are entitled to no weight under (c)(6).

Id.

4       20 C.F.R. § 404.1527(c)(6) states in relevant part: "For example, the amount of

5   understanding of our disability programs and their evidentiary requirements that a medical source

6   has,. . . and the extent to which a medical source is familiar with other information in your case

7   record, are relevant factors that we will consider in deciding the weight to give a medical

8   opinion." Id. Here, Plaintiff contends the ALJ failed to acknowledge that Dr. Ali "evidenced no

9   understanding" of portions of the record, specifically an August 27, 2014, EMG study. ECF No.

10  21, pg. 30.

11      The Court rejects this argument. First, Dr. Ali's report, contained at Exhibit 19F,

12  CAR 771-74, specifically indicates that the doctor reviewed a record dated "08/27/2014." Id. at

13  771. Second, contrary to Plaintiff's suggestion that Dr. Ali diagnosed "possible carpal tunnel

14  syndrome," Dr. Ali diagnosed "[l]ikely carpal tunnel syndrome," indicating the doctor was aware

15  of the August 27, 2014, EMG study revealing wrist neuropathy and agreed that the study showed

16  carpal tunnel syndrome. Id. at 774. Third, an EMG study – which is simply a piece of the

17  objective evidence – does not in and of itself indicate a medical diagnosis such that it is

18  necessarily inconsistent with Dr. Ali's opinion as to the meaning of the study. In other words, the

19  study is evidence to support the doctor's conclusions, not a conclusion standing alone. No piece

20  of objective evidence has any stand-alone value in determining residual functional capacity

21  absent a medical opinion explaining how such evidence demonstrates some effect on a claimant's

22  functional capacity.

23          ii.      The Doctor's Specialty

24  Plaintiff contends:

25          Subsection (c)(5) allows extra weight to be given to the opinion of
            a specialist. The signature block in Dr. Ali's report claims he is "board-
26          certified" but does not identify a specialization. A review of his licensure
            information with the CMB discloses that he is not an internist; he is a
27          sleep medicine specialist. (footnote omitted). While Ms. Thomas' history
            of sleeplessness and fatigue were recognized by the State agency records
28          reviewers and the ALJ (AR 113, 26, 790, 798) Dr. Ali made no reference

1

2
to them and made no findings as to their impact on functionality.
Accordingly, his specialization is not relevant, and does not entitle Dr. Ali
to any enhanced credibility under (c)(5).

3
ECF No. 21, pg. 30.

4
Presumably citing 20 C.F.R. § 404.1527(c)(5), which provides that the agency

5
will consider, among other things, a doctor's specialization, Plaintiff argues the ALJ failed to

6
identify Dr. Ali's area of specialty, if any.  According to Plaintiff, Dr. Ali's opinions are not

7
entitled to "enhanced credibility" based on specialization.  While the Court agrees generally in

8
that § 404.1527(c)(5) states that the ALJ will "generally give more weight to the medical opinion

9
of a specialist," this is not to say that controlling weight cannot be afforded to opinions from

10
doctors who are not specialists.  In any event, there is no indication in the ALJ's hearing decision

11
to indicate any additional weight was given to Dr. Ali's opinions due to a particular area of

12
specialty.

13
iii.      <u>Inconsistencies within Report</u>

14
Plaintiff argues the ALJ failed to consider inconsistencies among Dr. Ali's reports

15
under 20 C.F.R. § 404.1519p(a)(2).  <u>See</u> ECF No. 21, pg. 30.  This argument is squarely belied by

16
the ALJ's discussion of Dr. Ali's reports in which the ALJ acknowledges some inconsistencies

17
and accepts the more limiting opinions over the less limiting opinions.

18
iv.      <u>Inconsistencies with the Record as a Whole</u>

19
Next, Plaintiff contends:

20

21

22

23

24

25

26
Under § 404.1527(c)(4) consistency with the medical record as a
whole is also important. Dr. Ali's findings were markedly different from
those of the State agency medical records reviewers at Initial and
Reconsideration in several ways. For example, the State agency records
reviewers found no manipulative limitations (i.e. reaching, handling,
fingering, and feeling) while Dr. Ali's source statement limited reaching
handling and fingering to frequently and assessed never as to feeling. State
agency records reviewers found no environmental limitations, whereas Dr.
Ali said Ms. Thomas should never be exposed to humidity, wetness, dust,
odors, fumes, and/or pulmonary irritants. In addition, Dr. Ali's opinions
are contradicted in virtually every respect by the opinions of three treating
physicians. Dr. Ali's opinion is entitled to no enhanced weight, and
perhaps to no weight, under (c)(4).

27
ECF No. 21, pg. 31.

28
/ / /

27

1      Plaintiff's argument is unpersuasive because it presumes that the reports of the

2  three treating sources – Drs. Monie, Champlin, and McDaniel – are entitled to any controlling

3  weight.  As discussed in more detail below, the ALJ correctly concluded they are not.

4  Specifically, the treating source opinions are, in general, conclusory and unsupported.

5      Plaintiff's argument apparently contends the ALJ erred in discounting Dr. Ali's

6  opinions of <u>greater</u> limitation than found by the doctors who only reviewed records.  Plaintiff

7  contends Dr. Ali's opinions are inconsistent with the opinions of the consultative reviewing

8  doctors who found no manipulative or environmental limitations.  While the opinions do in fact

9  differ, the ALJ is entitled to resolve the conflict and, in this case, did so in Plaintiff's favor.

10                    v.      Level of Explanation in Report

11      Plaintiff asserts:

12          Section 404.1527(c)(3) states that: "The better an explanation a
        source provides for a medical opinion, the more weight we will give that
13       medical opinion." The opinions portion of Dr. Ali's report (AR 774)
        consists of 77 words in toto, without one word of explanation for any of
14       the limitations or lack thereof that he is claiming. Dr. Ali's "medical
        source statement" (765-70) has a section for explanations after each
15       subcategory of limitations assessments; there is not one word of
        explanation offered anywhere in that report for any limitations finding. Dr.
16       Ali's findings are entitled to no weight under § 404.1527(c)(3).

17      ECF No. 21, pg. 31.

18      The 77 words Plaintiff's says Dr. Ali used in expressing his opinions as to

19  Plaintiff's functional capacity are far more than were used by the treating sources, whose opinions

20  consisted entirely of check-the-box forms with little, if any, explanation.[6]  In any event, the Court

21  disagrees with Plaintiff that Dr. Ali's findings are unexplained.  To the contrary, the findings are

22  explained by the detailed summary of largely normal objective findings outlined in the doctor's

23  report.  <u>See</u> CAR 772-74.

24                    vi.     Thoroughness of Report

25      According to Plaintiff:

26

27          [6]      While Dr. Ali completed a check-the-box form, his form was accompanied by a
28  detailed written report outlining the doctor's objective findings, medical diagnoses, and opinions
    as to functional abilities.

1

2

3

4

5

6

7

8

Finally, there is the thoroughness of the Dr. Ali's examination, a relevant factor under § 404.15 19p(a)(4). The ALJ gave "great weight" to Dr. Ali's report because, according to the ALJ, it "was based on direct examination, personal observation and objective tests." AR 797. Dr. Ali's report is bejeweled with esoteric medical terms and tests, which obscures their essential meaninglessness. As but a few examples: (1) Dr. Ali evaluated Ms. Thomas' vision (which is in no manner implicated by any of her disabling impairments) using what he calls "Snellen's test" (AR 772); there is no such thing as "Snellen's test" though there is a "Snellen chart," the standard eye should chart found taped to the wall of every doctor's office; and (2) "inguinal lymph nodes" (AR 772) are lymph glands in the groin area, around the edge of the Mons Venus–they can become swollen because of skin infections such as athlete's foot or bladder infections; again none of these maladies are in any way related to Ms. Thomas' alleged (and actual) impairments.

9

10

11

12

13

14

15

16

17

Simultaneously with conducting impressive sounding tests having nothing to do with Ms. Thomas' claim and conducting irrelevant and intrusive physical examinations, Dr. Ali was ignoring and/or omitting crucial relevant testing for assessing Ms. Thomas' ulnar neuropathy. Three distinct tests are utilized during a physical examination to determine whether a patient has a ulnar neuropathy: Tinel's Sign (tapping or pressing on the median nerve–tingling or an electric-shock-like sensation indicates possible carpal tunnel syndrome); Phalen's Maneuver (flexion of the wrist for 1 to 2 minutes–numb or tingling fingers is a determinant of carpal tunnel); and Two-Point Discrimination Test (ability to distinguish between distinct pressure points–identifies nerve functioning and nerve compression deficits indicative of carpal tunnel). (Internet link omitted). Despite expressly acknowledging the likelihood of carpal tunnel syndrome (AR 774), Dr. Ali–arguably–conducted only one of those three tests, Tinel's Sign. (footnote omitted). Dr. Ali specifically failed to conduct the one test (Phelan's Maneuver) which is an absolute determiner of carpal tunnel syndrome. Contrary to the ALJ's bald assertion, there is nothing laudable, or even competent, about Dr. Ali's examination.

18

ECF No. 21, pgs. 31-32.

19

20

21

22

In essence, Plaintiff would have this Court accept her lay opinion as to which tests are relevant and which are not over the doctor's opinion as to which tests would adequately reveal Plaintiff's functional capacity.  The Court is unwilling to do so.  While Plaintiff states in her brief that certain tests are "crucial," she is not a doctor and cannot so opine.

23

/ / /

24

/ / /

25

/ / /

26

/ / /

27

/ / /

28

/ / /

1

2
        3.     <u>Consultative Reviewing Professionals, Drs. Pancho, Battis, Gallucci and Pollack</u>

3

4
       Drs. Pancho, Battis, Gallucci, and Pollack are all agency doctors who reviewed

5
medical records and rendered opinions.  Drs. Pancho and Battis opined as to Plaintiff's physical

6
capabilities.  Drs. Gallucci and Pollack opined as to Plaintiff's mental capabilities.

         i.     <u>Drs. Pancho and Battis</u>

7

8
       As to Drs. Pancho and Battis, whose opinions regarding Plaintiff's physical

impairments the ALJ gave great weight, the ALJ stated:

9

10
        . . . State agency medical consultants L. Pancho, M.D., and Sandra Battis, M.D., opined that the claimant could perform light exertional work with occasional climbing of ladders, stooping, kneeling, crouching, and

11
        crawling (Ex. 1A, 2A, 5A, 6A).

12
                   * * *

13
        . . . The State agency consultants [Drs. Pancho and Battis] are familiar with the Social Security rules.  Their assessments were based on their

14
        review of the medical records since the claimant's alleged onset date and their findings are consistent with and supported by the discussed overall

15
        medical records in the file. . . .

16
       CAR 795, 797.

17
       Plaintiff contends "[t]he deficits in this assessment are many."  Specifically,

18
Plaintiff argues: (1) the doctors' opinions are unexplained; (2) there is no indication the doctors

19
are specialists; (3) the ALJ fails to identify conflicting clinical evidence; (4) the ALJ does not

20
explain why she believed Plaintiff's carpal tunnel surgery in 2015 exacerbated rather than

21
relieved symptoms; and (5) the ALJ fails to identify the records she found consistent with the

22
doctors' opinions.  <u>See</u> ECF No. 21, pg. 33-34.  As to Dr. Battis in particular, Plaintiff states:

23
"The other medical records reviewer, Sandra Battis, M.D. shows no specialization on her MBC

24
webpage (footnote omitted) though it may be fair to characterize her as a specialist in giving the

25
Commissioner the opinions he wants. . . ."  <u>Id.</u> at 33.

26
       Plaintiff's last argument as to Dr. Battis is unpersuasive and, quite frankly,

27
insulting.  Plaintiff suggests that Dr. Battis is paid to render the opinion the Commissioner wants

28

1    in any given case.  Plaintiff, however, provides absolutely no factual support for this claim of

2    nefarious motive, nor can she given that the Commissioner's mission is the fair administration of

3    the social security program.  The Court categorically rejects Plaintiff's suggestion that the

4    Commissioner's decisions are result-driven and that Dr. Battis is a shill hired to support pre-

5    determined unfavorable decisions.  Moreover, the purpose for which a medical report was

6    obtained, without other evidence to undermine the report, is not a basis to challenge the opinions

7    in the report.  See Reddick, 157 F.3d at 726.

8           The Court also rejects Plaintiff's argument that the ALJ failed to consider whether

9    the doctors are specialists.  As discussed above, the regulations permit the ALJ to give greater

10   weight to the opinions of doctors who are specialists in relevant fields of medicine.  See 20 C.F.R.

11   § 404.1527(c)(5).  There is no indication in this case that the ALJ gave any additional weight to

12   the opinions of either Dr. Pancho or Battis based on a specialty.

13          Next, the Court finds Plaintiff's argument regarding her 2015 carpal tunnel surgery

14   unpersuasive.  According to Plaintiff, the ALJ failed to explain why she believed the 2015

15   surgery exacerbated rather than alleviated symptoms.  The Court, however, finds no indication in

16   the hearing decision that the ALJ so believed, and Plaintiff cites to no language in the decision

17   indicating such a belief.  In any event, whether Plaintiff's 2015 surgery made her carpal tunnel

18   condition worse or better is irrelevant to determining residual functional capacity because the

19   question at Step 4 is what the Plaintiff can still do despite her impairments.  What is important is

20   what Plaintiff can do following the surgery regardless of whether the surgery helped or made

21   things worse.

22          Plaintiff also contends the ALJ erred in relying on the opinions rendered by Drs.

23   Pancho and Battis because they are unexplained.  Plaintiff's argument is belied by the record.

24   The doctors' opinions are contained in Exhibits 1A, 2A, 5A, and 6A.  See CAR 81-93 (Exhibit

25   1A), 94-106 (Exhibit 2A), 109-22 (Exhibit 5A), and 123-36 (Exhibit 6A).  Exhibits 1A and 2A

26   contain Dr. Pancho's opinion of September 14, 2012.  See id. at 85, 87-88 (Exhibit 1A), and 98,

27   100-01 (Exhibit 2A).  Exhibits 5A and 6A contain Dr. Battis's opinion of April 27, 2013.  See id.

28   at 117-18 (Exhibit 5A), and 131-32 (Exhibit 6A).  These records clearly show a detailed analysis

1   of the evidence culminating in the doctors' opinions as to Plaintiff's physical and mental capacity.

2   See id. at 84-85 ("Findings of Fact and Analysis of Evidence," Exhibit 1A), 97-98 ("Findings of

3   Fact and Analysis of Evidence," Exhibit 2A), 113-14 ("Findings of Fact and Analysis of

4   Evidence," Exhibit 5A), and 127-28 ("Findings of Fact and Analysis of Evidence," Exhibit 6A).

5           Next, Plaintiff claims the ALJ erred by stating that the doctors' opinions are

6   consistent with other evidence of record but failing to specifically identify such evidence.  This

7   argument, which is not supported by any citation to authority, is unpersuasive.  Further, a review

8   of the hearing decision reflects that the ALJ referenced extensive evidence of record supporting

9   the doctors' conclusions that Plaintiff can perform a range of light work.  Such evidence includes

10  the opinions of Drs. Genest and Ali, discussed above, as well as the numerous instances of normal

11  objective findings on examinations.

12          Finally, Plaintiff faults the ALJ for not identifying conflicting clinical evidence

13  when evaluating the opinions rendered by Drs. Pancho and Battis.  This argument is also

14  unpersuasive.  Plaintiff cites the rule that the ALJ must set out a detailed summary of the facts

15  and conflicting clinical evidence when rejecting a medical opinion.  According to Plaintiff:

16  "Where, as here, an ALJ disagrees with the opinion of a medical source, the substantial evidence

17  rule requires that the ALJ '[set] out a detailed and thorough summary of the facts and conflicting

18  clinical evidence, stating his interpretation thereof, and making findings.' *Magallanes supra*, 881

19  F.2d at 751 quoting *Cotton v. Bowen, supra*, 799 F.2d at 1408."  ECF No. 21, pgs. 33-34

20  (emphasis added).  Here, however, the ALJ accepted the opinions of Drs. Pancho and Battis.

21                          ii.     Drs. Gallucci and Pollack

22          The ALJ summarized the opinions of Drs. Gallucci and Pollack, who reviewed

23  medical records related to mental impairments, as follows:

24          State agency psychological consultants Adrianne Gallucci, Psy.D., and
            Margaret Pollack, Ph.D., opined that the claimant could remember work-
25          like procedures and understand and remember short and simple
            instructions.  She could carry out short and simple instructions, maintain
26          attention for 2-hour segments, maintain regular attendance and be punctual
            within customary tolerances, sustain an ordinary routine without special
27          supervision, work in coordination with or proximity to others without
            being unduly distracted by them, make simple work-related decisions and
28          complete a normal workday and workweek without interruption from

psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and be aware of normal hazards and take appropriate precautions (Ex. 1A, 2A, 5A, 6A).

CAR 792.

As to these opinions, the ALJ concluded:

> . . .These opinions are given great weight because they are consistent with the discussed treatment records showing the claimant's mental conditions were relatively controlled with mediations prior to May 2014 and without medication since that time.
>
> Id.

Plaintiff argues the ALJ erred in failing to afford these opinions great weight because they "differ in some significant respects. . . ." ECF No. 21, pgs. 34-35.  According to Plaintiff: "[I]t defies reason that the ALJ could, with a straight face, accord equal weight to two such starkly contradictory opinions." Id. at 35.  Additionally, Plaintiff argues that the doctors' reports are not only inconsistent with each other but are also both internally inconsistent.  See id.

As with Drs. Pancho and Battis, the opinions of Drs. Gallucci and Pollack are contained in Exhibits 1A, 2A, 5A, and 6A.  See CAR 81-93 (Exhibit 1A), 94-106 (Exhibit 2A), 109-22 (Exhibit 5A), and 123-36 (Exhibit 6A).  Exhibits 1A and 2A contain Dr. Gallucci's opinion of September 25, 2012.  See id. at 88-91 (Exhibit 1A), and 101-04 (Exhibit 2A).  Exhibits 5A and 6A contain Dr. Pollack's opinion of May 8, 2013.  See id. at 115-16, 118-20 (Exhibit 5A), and 128-29, 132-34 (Exhibit 6A).  A review of these opinions reflects that Plaintiff is correct insofar as Drs. Gallucci and Pollack did not necessarily agree on the level of limitation in particular areas of mental functioning.  Specifically, in some areas, one doctor found Plaintiff's limitations moderate while the other doctor found only a slight limitation.

Defendant's argument is persuasive on this point.  According to Defendant:

> . . . [E]ven if they differed as to whether Plaintiff's limitations were moderate or not, their conclusions about what Plaintiff could do despite her limitations were *identical* (AR 89-90, 102-03, 119-20, 133-34). Relatedly, Plaintiff complains that Dr. Gallucci and Dr. Pollack found moderate limitations in some areas but then explained that they could

33

1

2

3

4

perform those tasks (ECF No. 21 at 34), but a moderate limitation does not mean one is precluded from that work, as these experts indicated. *Cf.* 20 C.F.R. § 404.1520a(c)(4) (defining only an "extreme" limitation in certain mental domains as "a degree of limitation that is incompatible with the ability to do any gainful activity"); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (affirming the ALJ's reliance on a translation of moderate limitations into concrete restrictions).

5

ECF No. 22, pg. 20.

6

7

8

Because the ALJ may translate moderate limitations into appropriate work restrictions, and because Drs. Gallucci and Pollack rendered the same ultimate opinions as to Plaintiff's mental functional capacity notwithstanding the lack of complete agreement, the Court finds no error.

9

10

4.     Treating Sources, Drs. Monie, Champlin, and McDaniel

According to Plaintiff: "The ALJ's discrediting of the opinions in six medical

11

12

source statements from three treating physicians [Drs. Monie, Champlin, and McDaniel] is

factually and legally invalid and must be reversed." ECF No. 21, pg. 36. As to what Plaintiff

13

14

labels "housekeeping" matters, Plaintiff argues: (1) as provided in the CAR, two of the source

statements are missing pages and "most are not found in consecutive page order. . ."; (2) the ALJ

15

16

"made no finding that any of the mental health-related opinions by the treating physicians were

contradicted. . ."; (3) these physicians' opinions are not conclusory in comparison to those offered

17

18

by Dr. Ali; (4) Drs. Monie, Champlin, and McDaniel are not in the practice of rendering opinions

for pay; and (5) contrary to the ALJ's statement, Plaintiff's representative did not agree with Dr.

19

20

Genest's testimony that there was no objective evidence to support the opinions of Drs. Monie

and McMullin.[7] Id. at 36-38.

21

22

For the reasons discussed below, the Court rejects these "housekeeping"

arguments because the treating source opinions were properly discounted by the ALJ. In

23

24

particular, Dr. Monie's opinions are conclusory and unsupported, are based on Plaintiff's

subjective complaints, and do not go to the ultimate issue of Plaintiff's residual functional

25

26

capacity. Similarly, Dr. Champlin's opinions are unexplained and conclusory. Dr. McDaniel's

27

28

_____

[7]     Plaintiff raises no specific arguments related to the ALJ's evaluations of Dr. McMullin's opinions, which the ALJ gave little weight.

34

1  opinions are likewise unsupported, conclusory, and appear to be based solely on Plaintiff's

2  subjective complaints.

3               i.    Dr. Monie

4            As to Dr. Monie, a treating source whose opinions the ALJ gave little weight, the

5  ALJ stated:

6         Herbert Monie, M.D., completed a CalWORKs work exemption form in
         February 2014.  Dr. Monie indicated that the claimant has chronic
7         conditions that precluded the claimant from working more than 2 hours
         per day, 4 days per week since a motor vehicle accident in August 2012.
8         He said that she was not in treatment, but "Anna" wrote on the form that
         she was taking prescription medication for "several" unspecified mental
9         health issues (Ex. 17F/2, 22F/20).  The form also relied on the claimant's
         need to attend AA and NA twice a week in evaluating her exception and
10        said that she has done home care in the past and worked at a pizza shop
         (Ex. 17F/3).
11
         This opinion is given little weight because it is conclusory and was not a
12        statement of the most that the claimant could do despite her impairments.
         For example, it did not evaluat[e] her abilities to sit, stand, lift, carry,
13        understand, remember, and carry out tasks.  Instead, it was a conclusory
         form for the purpose of exempting the claimant from a CalWORKs
14        requirement.  Dr. Monie saw the claimant in February 2014 in order to get
         the form completed (Ex. 16F/16).  Dr. Monie did not identify any
15        abnormal findings.  Moreover, aside from "social anxiety," he did not
         identify what specific conditions resulted in the limitations set forth on the
16        form.  In fact, she did not complain of any specific limitations of her hands
         to Dr. Monie and he diagnosed merely "social phobia," "pain in limb"
17        unspecified, "amphetamine abuse" in remission, and "marijuana" use.  Dr.
         Monie prescribed merely 20 mg Prozac and an inhaler (Ex. 16F/16-18).
18        But, as explained above, the claimant did not continue taking Prozac, and
         was stable mentally without it.  Thus, this opinion appears to be based
19        primarily on the claimant's subjective complaints rather than on any
         objective findings.  His opinion is not consistent with the other
20        examinations and opinions in the record or the claimant's functioning as
         discussed above.
21
         CAR 793-94.
22

23           Plaintiff raises a number of arguments challenging the ALJ's evaluation of Dr.

24  Monie's opinions.  See ECF No. 21, pgs. 39-42.  First, Plaintiff contends the ALJ failed "to cite

25  an iota of medical record evidence as support for any of her contentions."  Id. at 40.  Second, the

26  ALJ failed to explain how prescribing "merely 20 mg of Prozac" undermines Dr. Monie's

27  opinions.  See id. at 41.  Third, the ALJ's reference to the lack of complaints regarding Plaintiff's

28  hands is irrelevant given that Dr. Monie "was opining only on mental health issues."  Id.  Finally,

1  Plaintiff accuses the ALJ of "passive aggressiveness" towards the court's prior order in the first

2  appeal.  Id. at 41-42.  According to Plaintiff: "Every justification concocted by the ALJ for

3  discrediting Dr. Monie is made up, contrary to the evidence or an improper attempt to recycle and

4  disguise rationales this Court already rejected."  Id. at 42.

5          Again, the Court  reminds  Plaintiff's counsel of his obligation to maintain a

6  respectful tone when discussing an ALJ.  Plaintiff's unveiled suggestion that ALJ French acted

7  inappropriately fails to demonstrate counsel's mindfulness of this duty.

8          Turning back to the ALJ's evaluation of Dr. Monie's opinions, the ALJ cites the

9  following exhibits:  Exhibits 16F, 17F, 22F.  Exhibit 16F consists of medical records from Shasta

10  Community Health Center dated June 23, 2010, through June 2, 2014.  See CAR 726-53.  Exhibit

11  17F contains CalWORKs exemption forms completed by Dr. Monie.  See id. at 754-59.  Exhibit

12  22F consists of CalWORKs exemption forms dated May 9, 2012, through April 20, 2018.  See id.

13  at 1056-85.  Given the ALJ's citations to this evidence of record, the Court rejects Plaintiff's first

14  contention that the ALJ failed to cite any evidence.

15          As to Prozac, a review of the record reveals why the dosage prescribed by Dr.

16  Monie is relevant.  First, as Dr. Monie reports in Exhibit 16F, Plaintiff said "Prozac make[s] her

17  happy."  Id. at 741.  Second, at the time of the doctor's treatment, Plaintiff was only prescribed

18  one drug – Prozac – and an inhaler.  See id. at 743.  These facts reasonably indicate that

19  Plaintiff's symptoms were well-controlled and not causing Plaintiff much problem. Finally, as the

20  ALJ noted, Plaintiff stopped taking Prozac.  The Court therefore rejects Plaintiff's second

21  contention that the ALJ's reference to Prozac is unexplained.

22          In Exhibit 16F, Dr. Monie reported that he saw Plaintiff on February 26, 2014,

23  related to a request for a CalWORKs exemption form.  See id. at 741.  Dr Monie notes that

24  Plaintiff was injured in a "quad accident" in July 2012.  Id.   This is interesting in and of itself

25  given that Plaintiff alleges she became disabled in August 2008 and filed her application for

26  disability benefits in May 2012.  Dr. Monie diagnosed "social phobia" and "pain in limb."  Id. at

27  742.  Because Dr. Monie diagnosed "pain in limb," which relates to physical and not mental

28

impairments, the Court rejects Plaintiff's third argument that Dr. Monie was "opining only on mental health issues."

The Court also rejects Plaintiff's accusation that the ALJ "concocted" reasons to "recycle and disguise" rationales rejected in the prior appeal.  In Plaintiff's first district court case, the court concluded the ALJ's analysis of Dr. Monie's opinion was insufficient because, while the ALJ stated that Dr. Monie had only seen Plaintiff once in February 2014, the record showed otherwise.  See ECF No. 21, pg. 11 in Thomas v. Berryhill, E. Dist. Cal. case no. 2:16-CV-2060-DB.  In contrast, the ALJ's second hearing decision, which is the subject of the current appeal, makes no such misstatement of the record.  Moreover, the current hearing decision provides a detailed explanation of the reasons for rejecting Dr. Monie's opinions.  In particular, the ALJ noted that Dr. Monie's opinions of such extreme limitations is based more on Plaintiff's subjective complaints and desire to be exempted from welfare-to-work requirements than it is on objective findings noted by the doctor.  This conclusion is supported by Dr. Monie's own records which reveal normal objective findings on examination.  See e.g. CAR 742.

Plaintiff's specific "housekeeping" and other arguments notwithstanding, the ALJ does not err by discrediting a conclusory opinion that is unsupported by the doctor's own objective findings.  See Meanel, 172 F.3d at 1113; see also Magallanes, 881 F.2d at 751.

ii.    Dr. Champlin

As to Dr. Champlin, also a treating source whose opinions the ALJ gave little weight, the ALJ stated:

> . . .John Champlin, M.D., at Shasta County Mental Health, completed a CalWORKs Welfare-To-Work Exemption request form in May 2012 in which he indicated that the claimant became disabled on September 30, 2008, and her condition was expected to last until May 2013.  He stated she was unable to work due to her inability to focus and maintain attention for completion of tasks (Ex. 22F/17-19).  His opinion is not consistent with the medical records or objective clinical findings.  His opinion is not consistent with the other examinations and opinions in the record or the claimant's functioning.  In addition, there is no basis for the time period set forth – Dr. Champlin does not explain why she was disabled in 2008 and would be disabled until 2013.  He did not set forth a diagnosis or discuss any particular limitations, other than a statement that the claimant could not focus or concentrate ([Ex.] 22F/19).

CAR 793.

1       Plaintiff argues the "ALJ fails spectacularly" to provide a valid rationale to

2   discredit Dr. Champlin's opinions.  ECF No. 21 pgs. 38-39.  According to Plaintiff:

3           The ALJ fails to cite even one page from the 1266-page
        Administrative Record she contends is "not consistent" with Dr.
4       Champlin's work-preclusive opinions. The ALJ fails to identify a single
        "objective clinical finding" that is "not consistent" with Dr. Champlin's
5       work-preclusive opinions. The ALJ fails to identify a single "examination"
        that is "not consistent" with Dr. Champlin's work-preclusive opinions.
6       The ALJ fails to identify a single "opinion in the record" that is "not
        consistent" with Dr. Champlin's work-preclusive opinions. Finally, the
7       ALJ fails to identify a single aspect of "claimant's functioning" that is
        "not consistent" with Dr. Champlin's work-preclusive opinions. Even if
8       the ALJ's assertions were correct, her failure to identify an iota of
        evidence, much less substantial evidence, in support is reversible error
9       standing alone.

10          Id. at 39.

11      Plaintiff's argument that the ALJ failed to cite to any portion of the record in

12  support of her evaluation of Dr. Champlin's opinions is belied by the hearing decision.

13  Specifically, the ALJ cited Dr. Champlin's own report at Exhibit 22F, pages 17-19.  Moreover,

14  while the ALJ does not do so by page number, the ALJ also cites to the other objective findings

15  and opinions of record, which are thoroughly summarized in the hearing decision.

16      As indicated above, Exhibit 22F consists of CalWORKS exemption forms dated

17  May 9, 2012, through April 20, 2018.  See id. at 1056-85.  On May 8, 2012 – years after Plaintiff

18  said she became disables and weeks prior to Plaintiff filing her claim for disability benefits – Dr.

19  Champlin stated Plaintiff is "unable to work" due to inability to maintain attention to complete

20  tasks.  See id. at 1072, 1074.  The doctor also stated Plaintiff's inability to work was expected to

21  last until May 8, 2013 – one year later.  See id. at 1073.  These opinions were properly discredited

22  because the ultimate issue of disability is reserved to the Commissioner and because, as the ALJ

23  noted, Dr. Champlin provides no explanation as to why he believed Plaintiff's disability would

24  only last for one year, a finding which is also inconsistent with the doctor's statement that

25  Plaintiff's condition is "chronic." Id.  Dr. Champlin simply did not provide any opinions

26  concerning the most Plaintiff can do despite her impairments and limitations.  As such, the ALJ

27  did not err in rejecting the doctor's opinion on the ultimate issue of disability.

28  ///

1                          iii.      Dr. McDaniel

2              The ALJ also addressed opinions provided by treating source Dr. McDaniel:

3                  . . .Dr. McDaniel completed. . . CalWORKs exemption forms with
                   conclusory statements such as "not employable" (Ex. 22F/10).  He stated
4                  that the claimant could "never" balance, stoop, kneel, crouch, crawl, or
                   reach, with no explanation for these limitations ([Ex.] 22F.10).  Dr.
5                  McDaniel indicated repetitive hand/finger motions were limited due to
                   carpal tunnel and repetitive foot motions were limited due to plantar
6                  fasciitis (Ex. 22F/22).  His examination noted some carpal tunnel findings
                   that would account for the limitations in lifting, handling, and fingering.
7                  The limitations he proposed in lifting, handling, and fingering, although
                   not clearly quantified, are supported and incorporated into the residual
8                  functional capacity set forth herein.  However, his examinations do not
                   support limitations in standing [or] walking for no more than 2 hours and
9                  sitting for no more than 2 hours (Ex. 22F/22).  Moreover, there is no
                   ongoing treatment for any persistent plantar fasciitis documented in the
10                 record (Ex. 1F-24F).  He did not prescribe any pain medications, specialty
                   referrals, chiropractic adjustments, physical therapy, steroid injections,
11                 medical imagery, or any other alternative measures to control her alleged
                   pain complaints.  His opinion is not consistent with the other examinations
12                 and opinions in the record or the claimant's functioning as discussed in
                   this decision.

13              CAR 794.

14

15              The ALJ added that Dr. McDaniel's opinions are inconsistent with evidence that

16    Plaintiff's conditions are well-controlled with only sporadic treatment showing few objective

17    findings.  See id. at 795.  The ALJ also found that Dr. McDaniel's opinions are inconsistent with

18    the diagnostic imaging evidence.  See id.

19              The ALJ further discussed CalWORKs exemptions forms completed by Dr.

20    McDaniel as follows:

21                 In August 2015, primary care provider Dr. McDaniel completed a
                   CalWORKs form indicating the claimant could not work due to social
22                 anxiety and asthma, which had existed since 2008 (Ex. 22F/9-10, 23).  In
                   May 2016, Dr. McDaniel stated her unspecified condition had been
23                 present for 6 months and prevented work activity (Ex. 22F/24).  In May
                   2017, he completed a form indicating she had been unable to work due to
24                 unspecified conditions present since "birth" (Ex. 22F/29).  In April 2018,
                   Dr. McDaniel completed a CalWORKs form indicating the claimant's
25                 conditions had been present since 2008.  She could stand and walk 0-2
                   hours and could sit 0-2 hours due to back pain.  Use of hands and fingers
26                 was limited for repetitive motions due to tingling in her fingers.  Use of
                   her feet for repetitive motions was limited due to right foot numbness.
27                 She could occasionally lift 20 pounds and could occasionally perform
                   postural activities.  He indicated she could not function in a work-like
28                 setting due to "high stress" (Ex. 22F/4-5, 27-28).  These opinions are

                                              39

given little weight because they are not supported by his treatment records, which document few objective findings.

Id. at 796.

The ALJ added:

. . .[Plaintiff] sought little treatment for back, wrist, or joint complaints at this clinic (Ex. 23F). In August 2015, it was noted that she "moves well" despite her pain complaints and her scoliosis was "stable" (Ex. 23F/31). In May 2016, Dr. McDaniel stated, "she wanted a form for welfare filled out that she is too sick to attend classes and this form was completed exempting her for back pain and breast pain and peptic ulcer, motivation out of these conditions impeded by quest for disability." Examination revealed only some dense breast tissue and some nonspecific tenderness of her breasts and abdomen. There were no abnormal examination findings of her back or joints and no new treatment for her back or joint complaints was prescribed (Ex. 23/24-25). Although Dr. McDaniel['s] records show that she had been prescribed hydrocodone and ibuprofen in 2016, she reported she only uses marijuana for pain. She complained of back and leg pain in May 2017 but stated her symptoms were controlled with marijuana and she refused medications. Examination revealed merely "mild scoliosis" and she walked favoring her right leg (Ex. 23/17, 22-23). However, these findings were transient as prior and subsequent examinations revealed few, if any, musculoskeletal findings or gait disturbances (Ex. 23F). Radiographs of the lumbar spine revealed merely "mild" rotatory levoconvex curvature and "mild" degenerative disc space narrowing (Ex. 23F/55).
Throughout his records, Dr. McDaniel acknowledged that her scoliosis was "minor" and "scoliosis is nothing to qualify" for disability. . . . Moreover, Dr. McDaniel noted that her impairments were "all stable" (Ex. 22F/27). . . .

Id. at 796-97.

Plaintiff first contends that, contrary to the ALJ's assertion that Dr. McDaniel only saw Plaintiff once a year primarily for the purposes of obtaining renewed CalWORKs exemption forms, Dr. McDaniel saw Plaintiff "far more frequently." ECF No. 21, pgs. 43-44. Second, Plaintiff accuses the ALJ of intentionally ignoring the longitudinal medical record which, according to Plaintiff, supports Dr. McDaniel's opinions. See id. at 44-45. Third, the ALJ erred in concluding that Dr. McDaniel never sought treatment for her wrist or back issues at Dr. McDaniel's clinic. See id. at 45. Finally, Plaintiff argues the ALJ's conclusion that Dr. McDaniel's opinions relating to mental health issues carry no weight because Dr. McDaniel did not provide mental health treatment is flawed given that Dr. McDaniel, as a general practitioner and treating physician, is qualified to opine as to mental health issues. See id.

1           As noted by the ALJ, Dr. McDaniel's records are contained in Exhibits 22F and

2   23F.  See CAR 1056-78.  On June 8, 2015, Dr. McDaniel indicated that Plaintiff's various

3   conditions which prevent work have existed since 2008.  See id. at 1078.  On August 8, 2015, Dr.

4   McDaniel completed a form as to Plaintiff's mental capacities and, for each category of mental

5   functioning (i.e., daily activities, social functioning, etc.), the doctor noted simply "cannot work."

6   Id. at 1064.  Dr. McDaniel opined that Plaintiff can never lift, carry, climb, balance, stoop, kneel,

7   crouch, crawl, or reach in any direction.  Id. at 1065.  Again, the doctor concluded Plaintiff is "not

8   employable."  Id.  Dr. McDaniel did not cite any objective findings to support these opinions.

9   See id. at 1064-65.  On May 12, 2016, Dr. McDaniel stated Plaintiff's conditions preventing work

10  existed since "6 mo."  Id. at 1079.  On May 2, 2017, however, Dr. McDaniel stated that Plaintiff's

11  conditions existed since birth.  See id. at 1084.  On April 20, 2018, Dr. McDaniel stated Plaintiff

12  required no assistance in activities of daily living, suggesting a high degree of improvement in

13  symptoms since August 2015 when the doctor indicated Plaintiff "cannot work" due to limitations

14  in activities of daily living.  See id. at 1080.  Moreover, Dr. McDaniel's chart notes at Exhibit

15  23F reflect grossly normal findings.  See id. at 1086-1134.

16          The Court rejects Plaintiff's various arguments and instead focuses on the elephant

17  in the room which Plaintiff ignores – Dr. McDaniel's various statements undermining his own

18  findings.  At various times, the doctor states Plaintiff's conditions have existed for the past six

19  months, since 2008, and since birth – all of which are inconsistent and, thus, unreliable.

20  Moreover, while the doctor states that Plaintiff's conditions are disabling and chronic with no

21  anticipated end date, Dr. McDaniel initially opined that Plaintiff can never engage in postural

22  activities and, later, that she can engage in some postural activities on an occasional basis only.

23  This either shows inconsistency among the doctor's various opinions or substantial improvement

24  in Plaintiff's conditions over time.  Finally, the chart notes at Exhibit 23F are devoid of abnormal

25  objective findings to the degree as would support any of the doctor's varying and extreme

26  conclusions.

27  / / /

28  / / /

1    As with Dr. Monie, and notwithstanding Plaintiff "housekeeping" and other

2  arguments, the ALJ did not err in rejecting Dr. McDaniel's conclusory unsupported opinions.  See

3  Meanel, 172 F.3d at 1113; see also Magallanes, 881 F.2d at 751.

4    **E.    Lay Witness Evidence**

5    In determining whether a claimant is disabled, an ALJ generally must consider lay

6  witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915,

7  919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay

8  testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

9  evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100

10  F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of

11  lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.

12  When rejecting third party statements which are similar in nature to the statements of plaintiff, the

13  ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement.  See

14  Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

15  rejection of a third-party family member's testimony, which was similar to the claimant's, for the

16  same reasons given for rejection of the claimant's complaints).

17    At Step 4, the ALJ considered third-party lay witness evidence from Plaintiff's

18  friend, Susan Smith.  See CAR 790-91.  The ALJ stated:

19    > A third-party report was provided by Susan Smith, the claimant's friend,
20    > which is generally supportive of the claimant's allegations (Ex. 4E).
    > However, it is given only some weight.  Ms. Smith is not a medical
21    > source.  Moreover, her report, like the claimant's allegations, is not
    > consistent with the preponderance of the opinions and observations by
22    > medical doctors in this case.

23    > Id.

    Plaintiff argues:
24
25    > . . . The ALJ's first basis, that "Ms. Smith is not a medical source"
    > is not legally germane. First, Ms. Smith was providing percipient witness
26    > testimony not medical opinion, whether she was a medical professional is
    > irrelevant. Second, the rationale has been repeatedly held legally improper.
27    > *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) ("The fact that lay
    > testimony and third-party function reports may offer a different
28    > perspective than medical records alone is precisely why such evidence is
    > valuable at a hearing.").

42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

. . .The ALJ failed to specify which parts of Ms. Smith's
testimony she accepted and which parts she rejected, and this is a separate
reversible error. *Noble v. Colvin*, No. 1:14-cv-01307-TWP-MJD, at *14
(S.D. Ind. Apr. 20, 2015) (Reversing ALJ's rejection of third-party
testimony and remanding for further proceedings because ALJ did not
"explain which parts of their reports he accepted or rejected, and so the
Court cannot conclude that substantial evidence supports the ALJ's
evaluation of these reports.").

ECF No. 21, pg. 46.

These arguments are persuasive.  First, the Court agrees that citation to Ms.

Smith's lack of medical expertise is irrelevant and improper given that the regulations specifically

require the ALJ to consider lay witness evidence.  See 20 C.F.R. §§ 404.1513(d)(4) & (e),

416.913(d)(4) & (e); see also Diedrich, 874 F.3d at 640.  Second, as Plaintiff notes, while the ALJ

found Ms. Smith's statements are entitled only to "some weight," the ALJ does not explain which

portions are being credited and which are not.  The Court is left to wonder why the ALJ found

Ms. Smith's statement somewhat credible but found Plaintiff's similar statements not at all

credible.  As with the ALJ's analysis of Plaintiff's statements and testimony, the ALJ's evaluation

of Ms. Smith's statements is conclusory and provides no meaningful basis for review.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1

## IV.  CONCLUSION

2          For the foregoing reasons, this matter will be remanded under sentence four of 42

3    U.S.C. § 405(g) for further development of the record and/or further findings addressing the

4    deficiencies noted above.

5          Accordingly, IT IS HEREBY ORDERED that:

6                1.      Plaintiff's motion for summary judgment, ECF No. 21, is granted;

7                2.      Defendant's motion for summary judgment, ECF No. 22, is denied;

8                3.      The Commissioner's final decision is reversed and this matter is remanded

9    for further proceedings consistent with this order; and

10               4.      The Clerk of the Court is directed to enter judgment and close this file.

11

12   Dated:  March 31, 2021

13                                         _____
                                           DENNIS M. COTA
14                                         UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28